EARLY TUCKER v. THE STATE.

No. 7339.　Decided October 24, 1923.

Rehearing denied January 16, 1924.

1.—Theft of Cattle—Insufficiency of the Evidence—Fraudulent Intent.

Where, upon trial of theft of cattle, the testimony was so uncertain upon the issue of fraudulent intent in taking the alleged animal, and the ownership thereof raised an issue which in all probability in the ordinary circumstances would have been litigated in a civil suit over property rights, and in view of the close issue thus made by the evidence this Court is exceedingly doubtful as to the effect of the argument of State's counsel, and therefore the judgment must be reversed and the cause remanded.

2.—Same—Argument of Counsel—Insufficiency of Evidence.

Where the State's counsel, in the closing argument said, if there was a member on the jury who is a member of a sect, organization or clan whose purposes and design are the more rigid enforcement of the criminal laws of this State, etc., they had an opportunity in the instant case to demonstrate their sincerity to the teaching and doctrine of such organization; taken in connection with the uncertainty upon the issue of fraudulent intent, the same is reversible error.

3.—Same—Rehearing—Argument of Counsel—Practice on Appeal—Rule Stated.

In a case where the facts are conclusive of guilt or where the State's case is very strong and the mitigating evidence meager, and the punish-

ment assessed is obviously referable to the evidence rather than to the argument, this Court might not feel called upon to order a reversal, but where the guilt or innocence is nicely balanced or the punishment is out of proportion to the facts a new trial will be granted. Distinguishing Bennett v. State, 254 S. W. R., 952.

Appeal from the District Court of Harrison. Tried below before the Honorable P. O. Beard.

Appeal from a conviction of theft of cattle; penalty two years in the penitentiary.

The opinion states the case.

*Huffman & Huffman,* for appellant.—On question of argument of counsel Hardy v. State, 13 S. W. Rep., 1008.

*R. G. Storey,* Assistant Attorney General, and *James T. Casey,* County Attorney for the State.

HAWKINS, Judge.—Conviction is for cattle theft. Punishment, two years in the penitentiary.

Appellant and Charley Jackson (owner of the alleged stolen animal), are both negroes living in the same community. Jackson bought a cow with a calf about a month and a half old. He kept the calf for more than a year, marking it with two splits in each ear. It disappeared and was gone some six months when it came back to Jackson's premises. It was then apparently marked with one split in the left ear and half overcrop in the right. This was appellant's mark and he claimed the animal as his property asserting that he had raised it. It is not necessary to set out the evidence pro and con relative to identity of the animal. State's witnesses testified that the scars of the original marks were discernible, and explained in detail the appearance of the ears showing where they had been remarked. These were all disputed issues of fact going to establish ownership. The jury was not without evidence to warrant their finding that the animal belonged to Jackson.

We think the court committed no error in refusing the special charges. Where applicable the issues were sufficiently covered by the main charge. Neither do we find basis for the complaint that the charge given was erroneous in limiting the defense to appellant's claim of ownership. The evidence made no other issue.

While the prosecuting attorney was making his closing argument he used the following language:

"Gentlemen of the Jury: If there is a member of this jury who is a member of any sect, organization or clan whose purposes and designs are the more rigid enforcement of the criminal laws of this State, and who believes that the criminal laws have not been and are not being enforced as they should be, you have an opportunity

in this case to demonstrate your sincerity to the teaching and doctrine of such organization.''

Objection was made to the remark. The bill certifies that no evidence was in the record justifying such a reference, and that appellant's attorney had said nothing in his argument provoking such language. As soon as the language was used the bill shows that ''the court then and there stopped Mr. Casey, reprimanded him for using such remarks and language before the jury in very positive language and further instructed the jury, at the request of the defendant, not to consider such remarks in determining their verdict and in no way to be influenced by them; and the assistant county attorney closed the discussion and took his seat.'' We think in view of the prompt action of the learned trial judge the matter presents no reversible error; especially is this true in the absence of a showing that there were any members of the jury to whom the language might have been of peculiar significance. The facts justified a verdict of guilty and only the minimum punishment was assessed.

The judgment must be affirmed and it is so ordered.

*Affirmed.*

### ON REHEARING.

## November 28, 1923.

HAWKINS, Judge.—Upon more mature consideration of this case in the light of the motion for rehearing we have concluded that our former opinion may have been erroneous. About an equal number of witnesses testified that the yearling in question belonged to appellant, as did those for the State, that it belonged to prosecuting witness. It appears from the record that after prosecuting witness spoke to appellant about the marks on the animal appellant came to the cow-pen of prosecuting witness and claimed the animal as his; also that he filed a complaint against said prosecuting witness for theft of same. Appellant testified that he owned the cow which was the mother of the yearling in question and that he milked her from the time it was born until it was about a year old; that he marked it and turned it out and that it ran in a field very near to the home of prosecuting witness from that time until it was taken up. Appellant's brother swore that he had been knowing the yearling in question since it was born and that it belonged to appellant. James Murray swore that he knew the cattle of appellant and that the yearling in question belonged to appellant. He had known appellant's cattle for a long time. Appellant's father swore that he had known this yearling ever since it was born and that it belonged to appellant. That there was bad blood between the two men, appellant and prosecuting witness, is also admitted. They had had a cutting and shooting scrape some years

before the loss of the animal in question, and had not spoken to each other during the interim, though they lived comparatively near to each other. The case on its facts is very similar to Moran v. State, 94 Texas Crim. Rep., 56, 249 S. W. Rep., 475, in which we held that where the testimony was so uncertain upon the issue of fraudulent intent in the taking, we would not be warranted in sanctioning the conviction. The evidence pro and con relative to the identity of the animal and the ownership thereof raised an issue which in all probability under ordinary circumstances would have been litigated in a civil suit over property rights. In view of the close issue thus made by the evidence we have become exceedingly doubtful as to the effect of the argument used by the State's attorney in his closing remarks to the jury, which is quoted in the former opinion. We have come to the conclusion that statements of this character should not be sanctioned, and we fear same come within the rule laid down of injury which can not be remedied by an instruction attempting to withdraw same from the consideration of the jury. It is a direct and pointed appeal to any member of any sect, organization or clan to demonstrate his sincerity to the teachings and doctrines of such organization by returning a verdict of guilty in this case. It was an appeal to any man on the jury who for any reason, real or fancied, might have believed that the criminal laws are not being enforced as they should be to demonstrate his belief in that position by returning a veridict of guilty in this case. If the case was not so close upon its facts and upon the issue of fraudulent intent there would be less likelihood of danger from such an appeal, but taking the two together, the near balance of the testimony on the question of a fraudulent taking, and the plain error of such an appeal, we are unwilling that this verdict should stand, and appellant's motion for rehearing is granted, the affirmance set aside, and the judgment reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

## January 16, 1924.

MORROW, PRESIDING JUDGE.—When the argument does not offend against some provision of the Constitution such as that declaring that the accused shall be confronted with witnesses against him, or some statute such as that forbidding the comment upon the failure of the accused to testify in his own behalf, this court feels impelled to look to the facts in evidence and the verdict rendered as well as the remarks of counsel of which complaint is made. Thus, in a case where the facts are conclusive of guilt, or where the State's case is very strong and the mitigating evidence meagre, and the punish-

ment assessed is obviously referable to the evidence rather than to the argument, this court might not feel called upon to order a reversal of the conviction because of an improper argument. The same argument, however, made in a case in which the question of guilt or innocence is nicely balanced or where the punishment is apparently out of proportion to the facts proved, the inference of injury might be deduced and a new trial demanded. The case of Bennett v. State, 254 S. W. Rep., 952, falls in the class of cases first mentioned above, and the present case is embraced in the other class. Having no fixed rule to guide them in determining when remarks of counsel which transcend the bounds of legitimate argument are of a nature demanding a reversal of the judgment, is a delicate and difficult duty that this court is too often called upon to decide. When confronted with the question, however, as in the present case, we feel that the remarks were not within the bounds of propriety and probably harmful to the accused, considering the evidence at hand and the verdict rendered, and the utmost that can be done is to exert the discretion and perform the duty to the best of the ability of the members of the court. The opinion rendered on appellant's motion for rehearing in the present case reflects such action. The State's motion for rehearing is therefore overruled.

*Overruled.*